# United States Court of Appeals
## For the First Circuit

No. 22-1011

UNITED STATES OF AMERICA,

Appellee,

v.

ANTHONY MONDREZ THOMPSON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Howard, Circuit Judges.

Charles W. Rankin, with whom Rankin & Sultan was on brief, for appellant.

Lauren S. Zurier, Assistant United States Attorney, with whom Zachary A. Cunha, United States Attorney, was on brief, for appellee.

March 10, 2023

**HOWARD**, **Circuit Judge**.  Anthony Mondrez Thompson pled guilty to being a felon in possession of a firearm, pursuant to a plea agreement in which he agreed to waive his rights to appeal his conviction and sentence.  Despite this waiver, Thompson now appeals the application of two sentencing enhancements: one for possession of a firearm in the course of a drug trafficking crime and the other for possessing one or more firearms with an altered or obliterated serial number.  Because we find his waiver of appeal to be valid and enforceable, we dismiss his appeal.

## I.

Thompson was arrested in June 2017 following a traffic stop.  He had twelve firearms in his vehicle, as well as approximately 134 grams of methamphetamine pills.  He had previously been convicted of a federal felony offense in 2005.  Following the 2017 arrest, he was ultimately charged with (1) being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1), 924(a)(2); (2) possession with intent to distribute 50 grams or more of methamphetamine under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B); and (3) possession of a firearm in furtherance of drug trafficking under 18 U.S.C. § 924(c)(1)(A).

In November 2020, the parties entered a plea agreement in which Thompson agreed to plead guilty to count 1, being a felon in possession of a firearm.  The government agreed to move to dismiss the other counts, and the parties agreed to jointly

- 2 -

recommend a sentence of five to eight years of imprisonment. The agreement also included an appeal waiver provision that would apply if the district court sentenced Thompson to an incarcerative term of eight years or less. Thompson reserved the right, however, to contest the application of various sentencing enhancements in the district court.

Following a change of plea hearing, discussed further below, sentencing took place in December 2021. At sentencing, the district court accepted the parties' plea agreement and sentenced Thompson to eight years of imprisonment.

## II.

On appeal, Thompson attempts to challenge the application of two sentencing enhancements: U.S.S.G. § 2K2.1(b)(6)(B), which the district court applied for possession of a firearm in the course of a drug trafficking crime, and U.S.S.G. § 2K2.1(b)(4)(B), which the district court applied because one or more of the firearms had an altered or obliterated serial number.

The gateway issue in this appeal is whether the appeal waiver contained in Thompson's plea agreement is valid and enforceable. For the following reasons, we conclude that it is.

A waiver of appellate rights is generally valid if the defendant entered into the agreement "knowingly and voluntarily." United States v. Teeter, 257 F.3d 14, 24 (1st Cir. 2001). To make

- 3 -

this determination, we look to the "text of the plea agreement and the content of the change-of-plea colloquy." Id. "Appeal waivers in plea agreements are 'presumptively valid,' so long as: (1) the agreement clearly delineates the waiver's scope; (2) the district court specifically inquired about the waiver at the plea hearing; and (3) denial of the right to appeal would not constitute a miscarriage of justice." United States v. Betancourt-Pérez, 833 F.3d 18, 22 (1st Cir. 2016) (citing Teeter, 257 F.3d at 23-25).

The waiver in this case provided that:

> Defendant hereby waives Defendant's right to appeal the conviction and sentence imposed by the Court, if the Court sentences Defendant to 8 years of incarceration or less. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the government retains its right to appeal any of the Court's sentencing determinations.

Thompson focuses only on the second and third Teeter prongs. He argues (1) that the appeal waiver is unenforceable because the district court's colloquy with him at the change-of-plea hearing was confusing and inadequate and (2) that it would work a miscarriage of justice to enforce the appeal waiver regarding the serial number sentencing enhancement, which he argues is unconstitutional. We address each argument in turn.

**A.**

In Teeter, we held "that the district court must inquire specifically at the change-of-the-plea hearing into any waiver of

appellate rights" to ensure that the defendant "freely and intelligently agreed to waive [his] right to appeal." 257 F.3d at 24. We have not prescribed mandatory language for this inquiry but have cautioned "that the court's interrogation should be specific enough to confirm the defendant's understanding of the waiver and [his] acquiescence in the relinquishment of rights that it betokens." Id. at 24 n.7. "The adequacy of such an inquiry 'depends on the specifics of the case, including questions asked or statements made by the judge, characteristics of the defendant, and evidence that the defendant understood that he was waiving his right to appeal.'" United States v. Staveley, 43 F.4th 9, 14 (1st Cir. 2022) (quoting United States v. Morillo, 910 F.3d 1, 3 (1st Cir. 2018)). In other words, "[c]ontext is important." United States v. De-La-Cruz Castro, 299 F.3d 5, 11 (1st Cir. 2002).

Thompson argues that the appellate waiver in his plea agreement should not be enforced, because the district court's colloquy with him about the waiver was "confusing and failed to clearly advise the defendant of the rights he was giving up." He lists three reasons why this was so: (1) the district court did not read Thompson the waiver or otherwise direct his attention to the specific text of the waiver, even though Thompson did not have the plea agreement with him; (2) the court mistakenly informed Thompson that he could appeal the denial of a motion to suppress that he had filed and, after subsequently clarifying with the

prosecutor that Thompson could not appeal that denial, told Thompson that he had waived the right to appeal "in most circumstances" without explaining what that meant; and (3) the court's exchanges with Thompson about his ability to challenge upward enhancements to the Sentencing Guidelines range were "confusing."

Two exchanges between the court and Thompson are primarily at issue. The first took place after the court outlined various rights Thompson would be waiving by pleading guilty:

> THE DEFENDANT: . . . Your Honor, like I was saying, I accept the binding plea under the provisions of 11(c)(1)(C) on the one count. Even in the plea agreement I preserved the right in order to not be subjected -- to challenge any aggravating factors or any sentencing enhancements. I still preserve the right. I just wanted to clarify that to be sure on record.
>
> THE COURT: Yes, sir. That's in the plea agreement.
>
> THE DEFENDANT: Okay.
>
> THE COURT: That you have maintained all of your rights to challenge the --
>
> THE DEFENDANT: Aggravating factors.
>
> THE COURT: -- sentencing guidelines and any --
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: -- and any additives or offense characteristics or anything like that.
>
> THE DEFENDANT: Yes, sir.

- 6 -

THE COURT: You retain that right for sure.

The second exchange took place later in the hearing as the court turned to specifically discussing the appeal waiver:

THE COURT: Okay. Great. Also as part of the plea agreement you agree to waive any right to appeal the sentence I impose except for the issue of the denial of the motion to suppress which you have preserved. You've agreed not to appeal the sentence that I impose if I accept the plea agreement and impose within those parameters. Do you understand that?

THE DEFENDANT: Can I get verification on that aspect, your Honor?

THE COURT: Sure.

THE DEFENDANT: Based on what I asserted earlier as far as my right to preserve the challenge of the aggravating factors or the sentence enhancements, those issues will still be preserved, though, right, if they ever become an issue?

THE COURT: They will be preserved for me. You can argue that before me.

THE DEFENDANT: Okay.

THE COURT: But once I impose the sentence that's between five years and eight years, then you have no right to appeal that issue to the Court of Appeals.

THE DEFENDANT: All right.

THE COURT: I'm just -- Mr. Shah or Mr. Dawson, I'm just looking for in here did, in fact -- did they preserve the decision on the motion to suppress for appellate review or no?

MR. SHAH: No, your Honor. Paragraph 12 is the standard appellate waiver.

THE COURT: Okay. So you've waived any right to appeal anything about this case in most circumstances as long as I follow the plea agreement and sentence you between five and eight years. Do you understand that?

THE DEFENDANT: Yes, your Honor.

Considering the transcript as a whole and taking the district court's statements in context, we cannot say that these exchanges require abrogation of the appeal waiver. Thompson acknowledges that we have declined to prescribe a specific format that the colloquy regarding the waiver must take -- thus, the district court was not required to read the appeal waiver to Thompson. See Teeter, 257 F.3d at 24 n.7; Staveley, 43 F.4th at 15 ("When the goal is to achieve a clear understanding, brevity can be a plus rather than a minus."). Despite not having the plea agreement in front of him, Thompson demonstrated detailed knowledge of the terms of both the appeal waiver and the plea agreement overall in his exchanges with the court, including reciting details of the agreement from memory and asking precise clarification questions. In response to questioning by the court, Thompson confirmed that he had signed the plea agreement voluntarily after thoroughly reviewing it and discussing it with his attorney. Thompson also confirmed that he was satisfied with his counsel's representation. And, as shown in the colloquy above,

the court inquired specifically into the waiver of appeal rights, as required by Teeter.  257 F.3d at 24.

We next turn to the court's mistaken statement that Thompson could appeal the denial of his motion to suppress and subsequent clarification that he could not appeal "in most circumstances."  We cannot say that this was a "direct contradiction of the tenor of the waiver" when taken in the context of the colloquy.  De-La-Cruz Castro, 299 F.3d at 12.  The court quickly clarified its mistake about the motion to suppress issue, and Thompson does not contend that he remained confused about whether he could appeal the denial of that motion.  Rather, he focuses on the court's clarification that he had "waived any right to appeal anything about this case in most circumstances" if the court sentenced him between five and eight years.  Advising a defendant who has signed an agreement containing an appeal waiver that he may appeal "in some circumstances" is not per se reversible error.  De-La-Cruz Castro, 299 F.3d at 12; see also United States v. Gil-Quezada, 445 F.3d 33, 37 (1st Cir. 2006).  As we have previously observed, "[t]hat statement is correct in the sense that we may entertain an appeal in order to correct a 'miscarriage of justice' even in the face of a knowing and voluntary waiver of appeal."  De-La-Cruz Castro, 299 F.3d at 12.  Thompson argues that even if it did not constitute per se error, the confusing nature of the colloquy in his case left uncertainty as to whether he could

challenge aggravating factors or sentencing enhancements on appeal. But reviewing the exchange as a whole, it is evident that the district court explicitly told Thompson that he could challenge those issues only before the district court. The court said, "They will be preserved for me. You can argue that before me. . . . But once I impose the sentence that's between five years and eight years, then you have no right to appeal that issue to the Court of Appeals." Thompson replied, "All right." The court's subsequent clarification that Thompson had not preserved the motion to suppress issue for appeal and that he had waived the right to appeal "in most circumstances" does not contradict this earlier explanation of Thompson's rights.

Furthermore, "[a]lthough the relevant knowledge under Teeter is what [the defendant] knew about the appellate waiver at the time the plea was accepted, we look to the whole record to determine what he understood about the waiver when he entered the plea." United States v. Villodas-Rosario, 901 F.3d 10, 18 (1st Cir. 2018). At the sentencing hearing, the district court again explained to Thompson that he had agreed to waive the right to appeal given that the court imposed a sentence of eight years -- the maximum sentence provided for in the plea agreement. The court summed up: "This, in fact, is a below-guideline-range sentence; and, therefore, you've waived your right to appeal the sentence that I've imposed." When the court asked Thompson's attorney

shortly after if there was anything else, counsel took no issue with the court's description of the appeal waiver, and Thompson expressed no concerns about the meaning of it. This lack of objection further supports the conclusion that Thompson understood the terms of the waiver when entering his plea. See, e.g., Villodas-Rosario, 901 F.3d at 18.

In sum, this was not a case in which the court provided broad assurances to the defendant that "directly contradicted the tenor of the waiver provision," Teeter, 257 F.3d at 27, made a statement that "was so misleading that it nullified [the] waiver of appeal," United States v. Padilla-Colón, 578 F.3d 23, 28 (1st Cir. 2009), or failed to correct a misstatement of the waiver provisions, United States v. Pacheco, 921 F.3d 1, 3 (1st Cir. 2019). We therefore conclude that the second prong of Teeter was met.

**B.**

Turning to the third prong of Teeter, Thompson argues that it would amount to a miscarriage of justice to enforce the appeal waiver regarding the serial number enhancement under § 2K2.1(b)(4)(B) because that enhancement violates the Second Amendment.[1] He does not argue that it would work a miscarriage of

---

[1] This issue was only raised in a supplemental brief tendered by Thompson (which we hereby accept for filing) and was not raised in Thompson's opening brief, even though New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022), had already been

- 11 -

justice to enforce the appeal waiver with respect to § 2K2.1(b)(6)(B), concerning the use of a firearm in connection with another felony offense, so we find that that argument is waived under the appeal waiver provision.

"[I]f denying a right of appeal would work a miscarriage of justice, the appellate court, in its sound discretion, may refuse to honor the waiver." Teeter, 257 F.3d at 25. We have recognized that this category "is infinitely variable" and "is more a concept than a constant," but we have nevertheless articulated some factors to consider: "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." Id. at 25-26 & n.9. This "exception has been applied 'sparingly and without undue generosity' and is therefore reserved for egregious circumstances." United States v. Ortiz-Vega, 860 F.3d 20, 28 (1st Cir. 2017) (quoting De-La-Cruz Castro, 299 F.3d at 13). For example, we have found a miscarriage of justice "when an error of significant or constitutional dimension is clear,"

decided. Although issues not raised in a party's opening brief are typically waived, United States v. Mayendía-Blanco, 905 F.3d 26, 32 (1st Cir. 2018), we conclude that this issue was already waived via the plea agreement, so we need not decide whether it has been doubly waived.

- 12 -

United States v. Del Valle-Cruz, 785 F.3d 48, 56 (1st Cir. 2015), or where "plea proceedings were tainted by ineffective assistance of counsel," Ortiz-Vega, 860 F.3d at 28 (quoting Teeter, 257 F.3d at 25 n.9).

Here, Thompson argues that, under New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022), the serial number enhancement that was applied to his sentence is unconstitutional and that it would therefore work a miscarriage of justice to enforce the appeal waiver. Thompson's guideline sentencing range was increased by four levels pursuant to § 2K2.1(b)(4)(B), based on his possession of one or more firearms with an altered or obliterated serial number. In Bruen, the Supreme Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. at 2126. For a firearm regulation covering such conduct to survive constitutional review, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. A district court in West Virginia subsequently applied this standard to 18 U.S.C. § 922(k), holding that statutory provision unconstitutional insofar as it criminalizes possession of a firearm with an altered or obliterated serial number. United States v. Price, No. 2:22-cr-97, 2022 WL 6968457, at *2-6 (S.D. W.V. Oct. 12, 2022). Thompson argues on appeal that the reasoning in Price similarly applies to

§ 2K2.1(b)(4)(B), because the sentencing guideline provides for an enhanced sentence based on similar conduct.

Setting aside the ultimate merits of the question, Thompson's argument that enforcing the appeal waiver as to this issue would constitute a miscarriage of justice fails largely on the first factor discussed in Teeter: clarity. It is far from clear that § 2K2.1(b)(4)(B) is unconstitutional. We are unaware of any court having directly decided the constitutionality of that sentencing enhancement, and Thompson identifies only one district court case, Price, in which a similar criminal statute was invalidated. Another district court recently disagreed with Price, holding that 18 U.S.C. § 922(k) is constitutional. See United States v. Holton, No. 3:21-CR-0482, 2022 WL 16701935, at *3-5 (N.D. Tex. Nov. 3, 2022). Thus, with some basis, Thompson himself acknowledges that "[t]his is a rapidly developing issue of law." See, e.g., United States v. Rahimi, 59 F.4th 163 (5th Cir. 2023) (federal statute prohibiting possession of firearm by someone subject to domestic violence restraining order is unconstitutional under Bruen). Clarity, therefore, does not yet exist. Given this lack of clarity, the district court's decision to impose the sentencing enhancement is not the type of "egregious" error requiring that we set aside the otherwise valid appeal waiver.

Based on the foregoing, we **dismiss** Thompson's appeal.

- 14 -